# Richmond

F.B.C. Stores, Inc. and Wine Cellars, Ltd. v. George Samuel Duncan.

August 30, 1973.

Record No. 8175.

Present, All the Justices.

*Maurice Steingold* (*Steingold, Steingold & Friedman,* on brief), for plaintiffs in error.

*Douglas K. Frith,* for defendant in error.

Poff, J., delivered the opinion of the court.

George Samuel Duncan (plaintiff) filed a motion for judgment against F.B.C. Stores, Inc. and Wine Cellars, Ltd. (defendants) and another (later dismissed as a party) seeking compensatory damages of $10,000.00 and punitive damages of $25,000.00 on account of

slanderous or insulting words, false imprisonment, and assault and battery. The trial court ruled as a matter of law that there was no evidence to support the claim for punitive damages, and final judgment was entered June 30, 1972 on a jury verdict for the plaintiff in the sum of $10,000.00.

Defendants contend that, in refusing the instruction they proffered, the trial court erroneously denied the jury an opportunity to consider their defense predicated upon Code § 18.1-127[1] and that the verdict was excessive. By assignment of cross-error plaintiff contends that the trial court should have permitted the jury to consider punitive damages.

During the opening week of defendants' new Collinsville department store, plaintiff, a large man dressed in a turtle neck shirt or sweater, blue jeans and boots, was "browsing" in the music department. The store used a customer self-service system with checkout cash registers located opposite the double-doored entrance foyer. Selecting a tape recorded music cassette and carrying it in his left hand, plaintiff left the music department and visited several other departments examining merchandise. When he came to the automotive department, he took out his billfold, counted his money, decided he did not want the cassette, laid it on merchandise displayed on the counter and walked to another department where he opened a sleeping bag to read the material content tag. Remembering that he was the only maintenance worker on duty that day at the telephone company and, expecting a call, he turned and walked "briskly" past the checkout lanes and through the exit doors.

Richard Pingatore, a small man, formerly a police officer, was employed by defendants as security supervisor. He testified that he noticed plaintiff with the cassette in his hand "looking around as if to see if anyone was watching." When plaintiff entered the automotive department he was lost from Pingatore's view for a brief interval. When he saw him next he was not holding the cassette but

---

[1] Code § 18.1-127. Exemption from civil liability in connection with arrest of suspected person.—A merchant, agent or employee of the merchant, who causes the arrest of any person pursuant to the provisions of § 18.1-126, shall not be held civilly liable for unlawful detention, slander, malicious prosecution, false imprisonment, false arrest, or assault and battery of the person so arrested, whether such arrest takes place on the premises of the merchant, or after close pursuit from such premises by such merchant, his agent or employee, provided that, in causing the arrest of such person, the merchant, agent or employee of the merchant, had at the time of such arrest probable cause to believe that the person committed wilful concealment of goods or merchandise. (1960 Repl. Vol.)

"made a gesture, as if to straighten up his jacket, or pants." When he saw plaintiff slip his hand inside a sleeping bag and suddenly make a "hasty exit" he pursued him through the exit doors. On the sidewalk Pingatore overtook plaintiff, stepped in front of him, showed his badge and identification and demanded to know what he had done with the cassette. Plaintiff told him that he had laid it on the counter in the automotive department. Pingatore testified that "I placed my hand on his left arm and wrist, to hold him, and bring him back into the store"; that after passing through the foyer and the second set of doors "I let go his arm . . . and he walked in front of me over into the auto section, and when we got over there where he said he laid the tape, it was not there . . . and I asked would he mind coming into the manager's office"; that after he closed the office door plaintiff "already had his billfold out . . . and then he started to proceed to take his clothes off"; that he told plaintiff he did not intend to search him and asked him to put his clothes on and return with him to the automotive department to search for the cassette again; that the department manager advised him that he had found the cassette and returned it to the music department; and that he then expressed his regrets for the mistake.

Plaintiff testified that Pingatore did not identify himself; that he seized him with both hands "walking close like this, like I was a criminal being led to prison"; that "he was, more or less, dragging me back through the exit doors"; that he took him past the people in the checkout lanes directly to the manager's office and "kept his hand on me, and his foot behind me, in case I was going to turn and run"; that he protested his innocence but Pingatore treated him as a thief and liar, refused to search for the cassette, "patted me down real quick" and "said would I unbuckle my trousers to show him"; that "just as I unbuttoned my trousers, and dropped my pants, the door to the office opened, and everybody in the checkout lanes could see me"; and that after approximately 15 minutes in the office they went to the automotive department where they learned that the cassette had been found and Pingatore said, "I'm sorry—just forget it."

◼ The first question we must decide is whether the exemption statute is applicable to the defense claimed by defendants. The answer depends upon whether the General Assembly, in its use of the phrase "causes the arrest of any person", intended the exemption to be available to a merchant whose agent restrained and detained for interrogation a person the agent had probable cause to believe had committed

the defined offense. Plaintiff says that the General Assembly intended by this phrase to make the exemption available only when the merchant or his agent caused the person to be placed under formal arrest by a law enforcement officer. Defendants say that unofficial restraint or detention caused by the merchant or his agent was within the intendment of the phrase.

We agree with defendants' construction.

Article 5 of the Code entitled "*Shoplifting*" contains four sections. Code § 18.1-126 defines three criminal offenses. Code § 18.1-126.1 fixes the penalties which attach thereto. Code § 18.1-127 creates the exemption from civil liabilities at issue here. Code § 18.1-128 defines "agents of the merchant".

Code § 18.1-127 provides that a merchant or his agent who causes the arrest of a shoplifting suspect will not be civilly liable for torts associated with the arrest if the merchant or his agent had probable cause to believe that the suspect was guilty. The torts named are "unlawful detention, slander, malicious prosecution, false imprisonment, false arrest, or assault and battery". The list of torts for which immunity was granted encompasses virtually all of the intentional torts to person recognized at common law. The scope of the exemption intended by the General Assembly was very broad.

Of particular significance was inclusion in the list of the words "unlawful detention". Conduct and circumstances constituting an "unlawful detention" would also constitute the tort of false imprisonment. Since the General Assembly listed both false imprisonment and unlawful detention, unless we are to presume legislative redundancy we must conclude that the legislature considered detention to have particular significance in this context. We will not so presume. We do so conclude.

Other language in the statute reinforces the conclusion. The exemption applies "whether such arrest takes place on the premises . . . or after close pursuit from such premises *by such merchant, his agent or employee* . . ." (emphasis supplied). This language shows that the General Assembly anticipated and made provision for those situations in which the merchant or his agent would make pursuit, apprehension, restraint and detention. Such conduct falls short of formal arrest. It may or may not be a prelude to formal arrest. But such conduct activates the exemption granted by the statute. The statute says so.

In construing a statute to ascertain legislative intent courts presume that the legislature never intends application of the statute to work

irrational consequences. As the facts in this case illustrate, application of the construction urged by plaintiff would work an irrational consequence. Defendants subjected plaintiff over his protest to physical restraint and detention. Defendants then discovered that the crime they suspected had not in fact occurred. At that point, if plaintiff's construction is accepted, defendants could have positioned themselves to assert a statutory exemption against civil liability only by detaining plaintiff further, procuring a warrant and causing a law enforcement officer to appear and place plaintiff under formal arrest.[2] Can the General Assembly be taken to have intended such a trespass upon the liberty of a person known to be innocent? Is it rational to assume that the legislature intended to protect a merchant who subjects a citizen to the unwarranted indignity of formal arrest but not a merchant who subjects a suspect to the lesser indignity of informal detention? We think not.

Not every merchant wishes to pursue formal arrest and prosecution, even after he has detained the suspect, discovered his pilfered merchandise and recovered it. His reasons may be solely compassionate. Whatever the reasons, this exercise of discretion is normally his. The construction urged by plaintiff would effectively foreclose the exercise of the merchant's discretion if he had any cause to fear that his compassion might be rewarded with a civil suit against him. We cannot ascribe to the legislature a purpose to encourage a proliferation of litigation, criminal or civil.

Reading the statute as a whole, we think that the General Assembly, seeking remedies for the multi-billion dollar epidemic of shoplifting and recognizing that police officers cannot be omnipresent, intended to immunize a "merchant, agent or employee of the merchant" who, either on the store premises or after close pursuit off the premises, restrains and detains those he has "probable cause to believe" have "committed wilful concealment of goods or merchandise" against civil liability for certain torts committed in the course of such restraint and detention.

The trial court erred in refusing to instruct the jury that Code § 18.1-127 is applicable to the defense of exemption claimed by defendants, and for that error the judgment will be reversed.

---

[2] If formal arrest were the only predicate for the statutory exemption, the fact that defendants had discovered plaintiff's innocence and knew they had no probable cause for formal arrest would not necessarily dissuade them from attempting to so position themselves as to enable them, if faced with a civil suit, to assert the exemption or adduce testimony designed to prove probable cause for both the informal detention and the formal arrest.

We consider now the second question. To say that the statute is applicable is not to say that defendants are entitled to the exemption. They are entitled to the exemption only if they prove probable cause for the restraint and detention.[3] The General Assembly undertook as a matter of public policy to strike a balance between one man's property rights and another man's personal rights. Under the statute, the merchant's right to protect his property was enlarged but not infinitely; the litigable rights of the public were diminished but not extinguished. In any new trial whether probable cause is proven will depend upon whether the circumstances disclosed by the evidence were such as to justify an ordinarily prudent person in acting as defendants acted here. Unless the evidence leaves no room for reasonable men to disagree, that will be a question of fact properly within the province of the jury.

We consider now the question raised by plaintiff's assignment of cross-error, viz., whether the trial court erred in ruling as a matter of law that there was no evidence to support plaintiff's claim for punitive damages.

The function of compensatory damages is to make the plaintiff whole. The function of punitive or exemplary damages is to punish the defendant for malicious conduct or to display to others an example of the consequences they may expect if they engage in similar conduct. *See Wright* v. *Everett*, 197 Va. 608, 90 S.E.2d 855 (1956). Relying upon *Giant of Virginia, Inc.* v. *Pigg*, 207 Va. 679, 152 S.E.2d 271 (1967), plaintiff argues that to justify punitive damages actual malice need not be shown, that legal malice is sufficient, and that legal malice may be inferred from conduct " 'under circumstances of insult, rudeness, oppression, or in a manner showing reckless and wanton disregard of plaintiff's rights.' " *Pigg, supra,* 207 Va. at 686, 152 S.E.2d at 277. Plaintiff misreads *Pigg.* There, in a suit for malicious prosecution we upheld the trial court's order setting aside a verdict for punitive damages in the following language:

"Here the jury inferred, as it had a right to do, that lack of probable cause and the circumstances . . . constituted legal malice. But the fact that Phlegar was not performing his duty in a reasonable way cannot be blown up to show that he was guilty of actual malice.

---

[3] We note that in amending Code § 18.1-126 to create two additional *"Shoplifting"* offenses, Acts 1970, c. 652, the General Assembly did not amend the "probable cause" clause of the exemption statute, Code § 18.1-127, to make the exemption expressly applicable to the two newly-created offenses.

Consequently, the evidence does not warrant the award for punitive damages." *Pigg, supra,* 207 Va. at 686, 152 S.E.2d at 277.

The rule in Virginia is that in suits for malicious prosecution legal malice inferred from circumstances is sufficient to support an award of compensatory damages, but an award of punitive damages can be supported only by proof of actual malice. We perceive no reason why in suits for false imprisonment the rule with respect to punitive damages should be different. Since the record before us discloses no evidence of actual malice, we find no merit in plaintiff's assignment of cross-error.

*Reversed in part, affirmed in part and remanded.*