**Kay DeHart BRANDAU, Appellee,**

v.

**J. C. PENNEY COMPANY,
INC., Appellant.**

No. 79–1735.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 1, 1980.

Decided April 7, 1981.

S. D. Roberts Moore, Roanoke, Va. (W. Charles Waddell, III, Gentry, Locke, Rakes & Moore, Roanoke, Va., on brief), for appellant.

Stephen L. Willson, Roanoke, Va., for appellee.

Before RUSSELL, WIDENER and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

In this diversity action, Kay DeHart Brandau sued J. C. Penney Company, Inc. (Penney) for false arrest and imprisonment and malicious prosecution after Penney had her prosecuted for willful concealment of goods or merchandise under Va. Code § 18.2–103 (Repl.1975).[1] Penney appeals from the district court's denial of its motion for judgment n.o.v. following a jury verdict for Brandau on her malicious prosecution claim. We agree with Penney's contention that under Virginia law—specifically Va. Code § 18.2–105 (Cum.Supp.1980)—and the evidence adduced, Penney was absolutely exempted from civil liability because at the time of the incident it had probable cause to believe that Brandau had willfully concealed merchandise in its store. Accordingly, we reverse and remand with directions to enter judgment n.o.v. for Penney on this claim.

I

On March 29, 1978, Mrs. Brandau went shopping in a J. C. Penney store in Roanoke, Virginia, with her four-year-old and ten-month-old sons. She first selected and paid for tennis shoes for her older son, then selected and picked up some stockings for herself. Distracted from paying for the stockings at that moment, she placed the closed bag containing the tennis shoes, the stockings package, her handbag, and her infant son in an available shopping cart and went with her older son to the toy depart-

---

1. Va. Code § 18.2–103 (Repl.1975) provides: *Concealing or taking possession of merchandise; altering price tags; transferring goods from one container to another; counseling, etc., another in performance of such acts.*—Whoever, without authority, with the intention of converting goods or merchandise to his own or another's use without having paid the full purchase price thereof, or of defrauding the owner of the value of the goods or merchandise, (i) willfully conceals or takes possession of the goods or merchandise of any store or other mercantile establishment, or (ii) alters the price tag or other price marking on such goods or merchandise, or transfers the goods from one container to another, or (iii) counsels, assists, aids or abets another in the performance of any of the above acts, shall be deemed guilty of larceny and upon conviction thereof shall be punished as provided in § 18.2–104. The willful concealment of goods or merchandise of any store or other mercantile establishment, while still on the premises thereof, shall be prima facie evidence of intent to convert and defraud the owner thereof out of the value of the goods or merchandise.

ment. There she bought him a toy and then took the elevator to the second floor to buy a swimsuit for her ten-year-old daughter.

As Brandau was getting on the elevator, a J. C. Penney security guard observed that she had not paid for the stockings and accompanied the Brandaus up in the elevator. After leaving the elevator Brandau saw that her infant son was trying to chew the cellophane on the stockings package. Consequently, she took the stockings away from him, placed them in the large bag containing the tennis shoes, rolled the bag closed, and set her handbag on top of it. She then bought a swimsuit and returned to the first floor. She did not pay for the stockings at these other departments because she thought that she could pay for them only at the hosiery counter.

The security guard noted that the stockings were no longer visible in the shopping cart, so she followed Brandau to the first floor, accosted her as she left the elevator, and asked her to come to the guard's office. Once there the guard told Brandau that she was suspected of committing the crime of willful concealment in violation of Va. Code § 18.2–103 (Repl.1975). Brandau was asked to sign a confession and a release. She refused to sign, gave her explanation of the concealment, and was permitted to leave the store.

Two days later, Brandau accepted service of an arrest warrant charging her with willful concealment of merchandise under Va. Code § 18.2–103. At the close of the state's evidence in the criminal prosecution the state judge acquitted Brandau and dismissed the charge.

Brandau then brought this diversity action against Penney, alleging two claims, one for false arrest and imprisonment, and the other for malicious prosecution. The district judge granted a directed verdict to Penney on the first count concluding as a matter of law that Penney's guard had probable cause to believe that Brandau had

willfully concealed the stockings, thus establishing the absolute statutory defense. The malicious prosecution claim was submitted to the jury, however, on the basis that the same probable cause did not provide a complete defense to the claim, and that on it Brandau had made out a prima facie case. After the jury returned a verdict for Brandau on this claim, the district court denied Penney's motion for a judgment notwithstanding the verdict, and this appeal followed.

## II

The dispositive issue is whether, as Penney contends, the probable cause found by the district court to provide an absolute defense to the false arrest and imprisonment claim under Va. Code § 18.2–105 (Cum.Supp.1980) similarly provided an absolute defense to the malicious prosecution claim. At the time of the incidents in issue, § 18.2–105 (Cum.Supp.1980) provided:

*Exemption from civil liability in connection with the arrest of suspected person.*—A merchant, agent or employee of the merchant, who causes the arrest of any person pursuant to the provisions of § 18.2–95 or § 18.2–96 or § 18.2–103, shall not be held civilly liable for unlawful detention, if such detention does not exceed one hour, slander, malicious prosecution, false imprisonment, false arrest, or assault and battery of the person so arrested, whether such arrest takes place on the premises of the merchant, or after close pursuit from such premises by such merchant, his agent or employee, provided that, in causing the arrest of such person, the merchant, agent or employee of the merchant, had at the time of such arrest probable cause to believe that the person had shoplifted or committed willful concealment of goods or merchandise.[2]

In granting a directed verdict on the false arrest and imprisonment claim but not on the malicious prosecution claim, the district court must necessarily have found in

2. The statute has since been amended in particulars not relevant to this appeal. It now appears as Va. Code § 18.2–105 (Cum.Supp.1980).

the statute a distinction between the probable cause which exonerates for a suspect's arrest and that which exonerates for his criminal prosecution for the same observed act of concealment. The distinction found and applied by the court is revealed in the court's instruction to the jury on the malicious prosecution claim as contrasted with its stated basis for granting a directed verdict on the false arrest claim. The jury was instructed that the merchant was exempt from civil liability on the malicious prosecution claim only if it had probable cause to believe that the concealment was done *with the intention wrongfully to deprive the merchant of his goods.* But on the same evidence, the court directed a verdict for Penney on the false arrest claim on the basis that, as a matter of law, the evidence showed that at the time of detention the guard had probable cause simply to believe that the goods had been willfully concealed. We cannot agree with the construction given the statute in respect of the malicious prosecution claim.

Virginia law, of course, controls the interpretation and application of this critical statutory provision. In the absence of a definitive interpretation by the state's highest court on the precise point in issue, we must, of course, seek to divine that court's probable interpretation. *McClung v. Ford Motor Co.,* 472 F.2d 240, 240 (4th Cir. 1972). No guidance is apparently available in authoritative lower court decisions nor in formal legislative history. We must, therefore, apply general canons of construction as we think the state's highest court would apply them, supplemented by any guidance to probable construction that may be found in related expressions by that court.

The distinction applied by the district court is not found in the literal text of the statute. The probable cause defense as there defined runs alike to all the tort claims specified in the statute. It does not include as to any of these any reference to the suspect's intentions with respect to wrongful deprivation of merchandise, whether actual or as believed by the merchant to exist. On this aspect of the statute there is therefore no internal ambiguity. Under the basic plain meaning canon of construction, we conclude that the highest state court would apply the statute according to its literal text, which does not include the wrongful intent element read into the probable cause defense by the district court.

We are bolstered in this conclusion by the decision of the Supreme Court of Virginia in *F.B.C. Stores, Inc. v. Duncan,* 214 Va. 246, 198 S.E.2d 595 (1973). In that case, the court was required to interpret and apply the predecessor statute's[3] probable cause defense to claims of slander, false arrest and imprisonment, and assault and battery growing out of the admittedly mistaken apprehension and detention of a shopper. The interpretation there made by the court was a stringent one against the claimant, based upon the court's expressed perception that the legislature in "seeking remedies for the multi-billion dollar epidemic of shoplifting and recognizing that police officers cannot be omnipresent ..." had deliberately chosen to enlarge the merchant's "property rights" while diminishing the shopper's "personal rights." 198 S.E.2d at 599. Specifically at issue was the claimant's contention that the probable cause defense was only available in those cases where a formal arrest had been made, and that since none had been made in his case the merchant could not rely upon it. Though the literal language of the statute as then written could plausibly have supported this construction,[4] the court rejected it out of hand,

---

3. Va. Code § 18.1–127 (Repl.1960). This statute was identical in relevant language to the statute, § 18.2–105, here in issue.

4. The critical language was: "A merchant ... *who causes the arrest* of any person ... shall not be held civilly liable for unlawful detention [etc.] ... of the person *so arrested,* whether *such arrest* takes place on the premises of the merchant, or after close pursuit from such premises ..., provided that, in *causing the arrest* of such person, the merchant ... had *at the time of such arrest* probable cause [etc.] ...." Va. Code § 18.1–127 (Repl.1960) (emphasis added).

on the basis of a general perception that "[t]he scope of the exemption intended by the General Assembly was very broad." *Id.* at 598. "Arrest" was interpreted to mean "unofficial restraint or detention caused by the merchant or his agent...,"[5] thus making the defense available to the merchant. *Id.* at 597. From this we conclude that, if confronted with the interpretive issue here presented, the Supreme Court of Virginia would again interpret the statute in a way giving expansive rather than restrictive scope to the probable cause defense, particularly where, as here, the expansive interpretation is that indicated by the plain language of the statute. On that basis we hold that at the critical time here in issue the probable cause defense given merchants by § 18.2–105 required—with respect to all the civil claims enumerated in the statute— proof only that at the time of a claimant's unofficial detention the merchant had probable cause to believe that the claimant had willfully concealed merchandise, and did not require further proof that the merchant then or later had probable cause to believe that the suspect intended wrongfully to deprive the merchant of the merchandise.

In view of the district court's unchallenged conclusion that, as a matter of law, Penney's evidence established the probable cause defense to the false arrest claim, under the interpretation we find the Virginia court would give the statute the same evidence sufficed to establish the defense as to the malicious prosecution claim. On this basis, the judgment of the district court is vacated and the case is remanded with instructions to enter judgment n.o.v. for Penney on the malicious prosecution claim.

*VACATED AND REMANDED.*

5. In giving this interpretation to an admittedly ambiguous term in the statute, the court incidentally removed another basis than that here applied by the district court for distinguishing between probable cause as a defense to malicious prosecution claims and as a defense to all the other enumerated civil claims in the statute. By referring the probable cause inquiry to the time of unofficial detention as a matter of statutory construction, the court negated any suggestion that later discovered facts suggesting innocence might deprive the merchant of the defense if he nevertheless proceeded thereafter to cause an *official* arrest and criminal prosecu-

tion. While this consequence is one that might be thought particularly drastic in its diminution of the "personal rights" of citizen shoppers, this is a matter for legislative judgment. We are bound by the Virginia court's interpretation of what the statute means in this and other relevant respects. On appeal Brandau has raised an ill-defined challenge to the constitutionality of the statute on grounds that might have been intended to point up this consequence. No constitutional challenge was raised on trial, and we accordingly decline to address any made for the first time on appeal.