956 F.2d 1162
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Frank D. D'ANGELO, Plaintiff-Appellant,
v.
GIANT FOOD, INCORPORATED, Defendant-Appellee.
 No. 91-1718.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 4, 1991.
Decided March 5, 1992.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-90-1035-A)
 Argued: Ted Kavrukov, Kleiman & Kavrukov, Arlington, Va., for appellant; Sheila Anne Cleary, Jordan, Coyne, Savits & Lopata, Fairfax, Va., for appellee.
 On Brief: Barry Robert Poretz, Jordan, Coyne, Savits & Lopata, Fairfax, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL, PHILLIPS and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Frank D'Angelo, a shoplifter apprehended by Giant Food employees, appeals the district court's directed verdict in favor of Giant, wherein the court ruled that Virginia Code Ann. § 18.2-105 exempted Giant from civil liability for use of force by its employees to apprehend a suspected shoplifter. We affirm.
 
 I.
 
 2
 D'Angelo entered a Giant Food store in Alexandria, Virginia, on December 10, 1988, to purchase some items. While in the store, he placed a few items in his shopping cart and concealed others inside his jacket. He then went to the checkout counter to pay for the items in his cart.
 
 
 3
 Giant store detective Joan Russell had observed D'Angelo conceal several items in his jacket pockets. She alerted Andres Walta, another Giant employee, and asked Walta to watch D'Angelo.
 
 
 4
 As D'Angelo started to leave the checkout line after paying for his purchases, Russell stopped him and identified herself as a store detective. She told him that she had seen him put some grocery items in his pocket, and requested that he come with her. D'Angelo refused and headed for the exit doors.[1] Walta ran after D'Angelo, catching up with him at the exit doors where D'Angelo had paused to wait for the automatic door to open. Walta grabbed D'Angelo around the waist and both men fell to the floor as the door opened.
 
 
 5
 D'Angelo got up, complaining of pain in his arm, and was escorted to a room at the back of the store. There Russell removed the concealed items from D'Angelo's jacket and called an ambulance. D'Angelo suffered a double break in one arm, requiring emergency medical treatment as well as extended orthopedic care. He incurred medical expenses totalling $18,000 as a result of his injuries.
 
 
 6
 D'Angelo brought a suit against Giant under 28 U.S.C. § 1332 in the United States District Court for assault and battery. He sought compensatory damages for physical and psychological injuries as well as punitive damages.
 
 
 7
 The court granted Giant's motion in limine to exclude the testimony of D'Angelo's expert witness, Detective Hewick. D'Angelo sought to have Detective Hewick, an experienced police officer, give an opinion before the jury as to the reasonableness of the force used to apprehend D'Angelo.
 
 
 8
 At the conclusion of D'Angelo's presentation to the jury, the district court granted Giant's motion for a directed verdict. It concluded that Virginia Code § 18.2-105, which exempts merchants from civil liability for detention of shoplifters, barred any recovery by D'Angelo.
 
 
 9
 D'Angelo now appeals the district court order granting Giant's motion for directed verdict and the district court order granting Giant's motion to exclude D'Angelo's expert witness.
 
 II.
 
 10
 We first address D'Angelo's directed verdict claim. Our decision to affirm the directed verdict renders D'Angelo's second claim of little consequence, yet we also address that claim on its merits.
 
 
 11
 A. The Virginia legislature, like most state legislatures, has sought to immunize merchants' efforts to redress shoplifting. Virginia Code Ann. § 18.2-105 (Michie 1988) exempts from civil liability a merchant who arrests or detains a suspected shoplifter, provided the merchant had probable cause to believe the person had stolen or willfully concealed goods or merchandise.[2] See also F.B.C. Stores, Inc. v. Duncan, 198 S.E.2d 595 (Va.1973) (a merchant is exempt under statute from civil liability if it can show probable cause). The one express statutory requirement for exemption is that a merchant show probable cause to detain a suspect.
 
 
 12
 Almost all states with similar merchant immunity statutes expressly require, in addition to probable cause, that detention be conducted in a reasonable manner and limited to a reasonable period of time.[3] Thus, if a merchant uses force beyond what is reasonable under the circumstances, the merchant may be liable for damages. Common sense dictates that we infer such a reasonableness requirement in the Virginia statute. See F.B.C. Stores, 198 S.E.2d at 598 ("courts [should] presume that the legislature never intends application of the statute to work irrational consequences"). The Virginia legislature could not have intended, for example, to immunize a merchant from liability for apprehending a shoplifter through deadly force. The district court in this case also concluded that the statute required merchants to act reasonably in apprehending suspects." [I]t obviously does not give [the merchant] a right to lay on all the force that [it] wants to." (App. at 19.)
 
 
 13
 We find support for a reasonableness inference in the language of the statute and in a decision by the Virginia Supreme Court. The statute itself contains two specific requirements of reasonableness. It conditions exemption from liability for unlawful detainer upon the duration of detention not exceeding one hour. second, the latter half of the statute discussing use of electronic surveillance devices requires that detention resulting from use of such device be conducted "only in a reasonable manner and only for such time as is necessary for an inquiry into the circumstances surrounding the activation of the device...." § 18.2-105. While courts have not spoken directly to the issue of a general reasonableness requirement, the Virginia Supreme Court implied such a requirement when it stated that "[u]nder the statute, the merchant's right to protect his property was enlarged but not infinitely; the litigable rights of the public were diminished but not extinguished." F.B.C. Stores, 198 S.E.2d at 599.[4]
 
 
 14
 Having found a reasonableness requirement, we look to analogous Fourth Amendment law to devise a reasonableness test. Fourth Amendment analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of ... others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of [one] on the scene, rather than with the 20/20 vision of hindsight," "allow[ing] for the fact that [persons] are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 396-97. The test is one of objective reasonableness in light of the circumstances.
 
 
 15
 Turning to the case at hand, we follow our standard of review for directed verdicts and view the evidence in the light most favorable to the nonmoving party. Garraghty v. Jordan, 830 F.2d 1295, 1302 (4th Cir.1987). If we then find no substantial evidence supporting liability, we must affirm the district court's directed verdict. D'Angelo conceded probable cause but contended that Giant employees used unreasonable, excessive force in apprehending him, thus removing Giant from the protection of the merchant exemption statute. On the facts here, we disagree and hold that, even viewing the evidence in a light most favorable to D'Angelo, Giant's actions fell within the domain of objective reasonableness.[5] From the perspective of Giant employees at the time, D'Angelo had refused to voluntarily cooperate with the store detective and was about to leave the store, where it would have been more difficult to stop his flight. It was reasonable for Giant to attempt to physically restrain D'Angelo at that point.
 
 
 16
 We, therefore, find that the court properly entered directed verdict for Giant.
 
 
 17
 B. D'Angelo also challenges the court's exclusion of his expert witness. We find no merit in this contention.
 
 
 18
 Federal Rule of Evidence 702 permits a party to present expert witness testimony to "assist the trier of fact to understand the evidence or to determine a fact in issue...." However, expert testimony concerning matters within the common knowledge of jurors is of no assistance and should not be admitted. Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir.1986). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed.R.Evid. 702 advisory committee's note (quoting Mason Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952)).
 
 
 19
 The district court judge followed established law in excluding D'Angelo's expert witness. Nonexpert jurors are clearly competent to form intelligent opinions about the amount of force reasonable to apprehend a suspect in particular circumstances. Thus, we find no abuse of discretion here and affirm the court's exclusionary ruling.
 
 
 20
 In summary, we find that Giant acted with probable cause and reasonably in apprehending D'Angelo and, thus, was exempt from civil liability under Virginia statute. We affirm the district court's directed verdict for Giant.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 D'Angelo testified that he walked toward the doors; Russell, in contrast, testified that D'Angelo ran toward the exit
 
 
 [2]
 Section 18.2-105 provides:
 A merchant, agent or employee of the merchant, who causes the arrest or detention of any person pursuant to the provisions of § 18.2-95 or § 18.2-96 or § 18.2-103, shall not be held civilly liable for unlawful detention, if such detention does not exceed one hour, slander, malicious prosecution, false imprisonment, false arrest, or assault and battery of the person so arrested or detained, whether such arrest or detention takes place on the premises of the merchant, or after close pursuit from such premises by such merchant, his agent or employee, provided that, in causing the arrest or detention of such person, the merchant, agent or employee of the merchant had at the time of such arrest or detention probable cause to believe that the person had shoplifted or committed willful concealment of goods or merchandise....
 
 
 [3]
 See, e.g., Del.Code Ann. tit. 11, § 840(d); Miss.Code Ann. § 97-23-95; Mo.Rev.Stat. § 537.125(2)-(3); Neb.Rev.Stat. § 29-402.01; N.J.Rev.Stat. 2C:20-11; Tenn.Code Ann. § 40-7-116; Wyo.Stat. § 6-3-405(b). At least thirty states have enacted merchant immunity statutes; of these statutes, only Virginia's and Maryland's do not expressly require reasonable conduct by a merchant or the merchant's employees. See Md.Cts. & Jud.Proc. § 5-307
 
 
 [4]
 This case interprets § 18.1-127, the predecessor of § 18.2-105, whose wording is substantially the same as the relevant parts of the later statute
 
 
 [5]
 Other state court decisions support our finding of reasonableness. See, e.g., Illinois v. Rickman, 391 N.E.2d 1114, 1118 (Ill.App.1979) (security officer justified in forcing suspect to ground and using handcuffs where suspect tried to flee and resisted all attempts to restrain him); State v. Nelson, 354 So.2d 540 (La.1978) (store guards' conduct unreasonable where actions seem clearly excessive--suspect handcuffed, strip searched and then choked in an effort to disgorge ring he was suspected of swallowing)