Kasie D. JONES, Plaintiff,

v.

TARGET CORPORATION, d/b/a Target
Stores Incorporated, Defendant.

No. 1:04CV366.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 19, 2004.

William Hale Thompson, Jr., Charlottesville, VA, for Plaintiff.

Clark Hathaway Lewis, Troutman Sanders LLP, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this diversity suit plaintiff, Kasie D. Jones, a Pennsylvania resident, brings claims for false imprisonment and malicious prosecution against Target Corporation ("Target"), a Minnesota corporation, for her detention and arrest after she attempted to leave a Target store with a television and VCR for which she had no receipt, but which she claimed was an even exchange for earlier returned merchandise. Target seeks summary judgment on the ground that it is immune from liability pursuant to Virginia Code § 8.01–226.9 because at the time of detention its employees had probable cause to believe that Jones had committed the crime of petit larceny by carrying away electronics for which she had not paid.

For the reasons that follow, Target's summary judgment motion must be granted as the undisputed material facts reflect that Target's employees had probable cause to detain Jones.

### I.

The record reflects the following largely undisputed facts and where disputes exist they are either immaterial or construed favorably to Jones, as required.[1] On the evening of September 2, 2002, Jones, along with three of her friends, entered a Target store in Alexandria, Virginia where Jones intended to return a defective 19–inch TV/VCR combination machine that she had received as a gift from her parents. Jones' parents had purchased the TV/VCR from a Target store in Springfield, Pennsylvania. Upon entering the store, Jones went first to the customer service counter and returned the TV/VCR with a copy of the original receipt. The customer service agent, Porsche Todd, completed the return and refunded the $211.99 original purchase price to a credit card in Jones' mother's name. Todd claims that she provided Jones with a copy of a receipt to that effect. Jones does not remember receiving or seeing this receipt and claims that she was unaware that her mother's account had been credited. Instead, according to Jones, she understood that she would be permitted to make an even exchange of a new TV/VCR for the returned unit and that she could do so by simply selecting a comparable unit in the store. After completing this return transaction, Jones went to the electronics department where she and her friends continued to shop.

During the weeks and months prior to September 2, 2002, Target had experienced an increase in the number of instances of fraud involving the return of expensive merchandise, including electronics. Accordingly, Target Senior Asset Protection Specialist Issa Haddad and other security personnel observed Jones and her friends via surveillance cameras as they shopped in the electronics department. After perusing the shelves, Jones selected a 19–inch color television and a separate VCR, and placed them in her cart. She also selected a single compact disc. While Jones and her friends continued to shop,

---

1. In reviewing a motion for summary judgment, courts must view the facts in a light most favorable to the non-moving party. *See* *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

one of Jones' companions was observed on the surveillance cameras shoplifting two separate items. Specifically, while Jones stood a few feet away, her friend was observed by Target's security personnel removing a pen from its packaging and concealing it from view. A short time later, the same friend was observed taking a separate item out of her cart, concealing it from view, and placing it in her purse or backpack without paying for it.

Once Jones had completed her shopping, she approached a cashier in the electronics department in an attempt to check out, but the cashier told Jones that she could not ring up her television and VCR there. Accordingly, the employee led Jones to the front of the store where Jones approached a cashier in the customer service department. The cashier, Deanna Mays, began to ring up all three items in Jones' cart: the television, the VCR, and the compact disc. When Mays told Jones that her total for all three items was $211.06, Jones explained that she had already paid for the television and VCR because this was an even exchange for the TV/VCR combination she had previously returned. Based on this representation, Mays voided the transaction and rang up only the compact disc. Jones claims that she did not realize that the items had been voided; instead, she claims that she and Mays both understood the transaction to be an even exchange for the returned TV/VCR combo. At this time, Mays received a call from Haddad, who had been monitoring the group's activities by video surveillance, who advised Mays that Target Asset Protection personnel would now handle the situation with Jones and her electronics equipment. Jones then paid $8.30 cash for

the compact disc and received a stack of receipts, which she says she assumed documented the exchange of the non-working set for its replacement. With these receipts in hand, she proceeded toward the store exit.

Leaving the customer service station, Jones and her three friends pushed the cart and the electronics equipment toward and through the exit. Once Jones had exited the store, she was stopped by Target Protection Specialist Terrence Burnett. When Burnett asked Jones for a receipt to demonstrate that she had paid for the television and VCR, Jones handed him the receipts she had received from the cashier, but failed to produce a receipt proving that she had paid for the television and VCR in her cart. Shortly thereafter, Asset Protection Specialists Haddad and Steven Caraway arrived on the scene. Concluding that they had probable cause to believe that Jones had shoplifted the television and VCR, Haddad, Burnett, and Caraway detained Jones, and took her to a separate room for questioning.[2]

Approximately twenty minutes later, Alexandria City Police Officer Scott J. Patterson arrived at the Target store and questioned Jones and various Target employees. From his investigation, Officer Patterson concluded that there was probable cause to believe that Jones had committed the crime of petit larceny pursuant to Virginia Code § 18.2-96. Accordingly, Officer Patterson arrested and charged Jones with the offense and shortly thereafter Jones was released on a summons directing her to appear in the Alexandria General District Court on October 1, 2002. In her deposition, Jones conceded that

**2.** Haddad claims that during questioning Jones admitted that she knew her mother's credit card had been refunded the purchase price of the TV/VCR and that she had in her possession at the time of detention the Target receipt documenting that refund. Jones ada-

mantly claims to the contrary. Ultimately, however, this fact is immaterial to whether Target's security personnel had probable cause to detain Jones at the time she left the store.

Target's employees detained her for only fifteen to twenty-five minutes, at which time Officer Patterson arrived and detained her for only ten to fifteen minutes longer.

It appears that Target regained possession of the television and VCR before Jones was released. And, as Jones' mother conceded in her deposition, she received a credit of $211.99 dated September 2, 2002 on her next credit card statement.

At an October 1, 2002 bench trial, Jones pled not guilty and was acquitted of the offense of petit larceny. On March 4, 2004, Jones filed a motion for judgment against Target in Alexandria Circuit Court, alleging malicious prosecution and false imprisonment and demanding $200,000 in compensatory and punitive damages. Target then filed a timely notice of removal on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1441 and 1446. On September 24, 2004, Target filed this summary judgment motion arguing (i) that Target is immune from liability pursuant to Virginia Code § 8.01–226.9 for Jones' claims for malicious prosecution and false imprisonment because at the time Target's employees detained Jones and caused her to be charged, they had probable cause to do so, (ii) that Jones has failed to establish her claims of malicious prosecution and false imprisonment because she has failed to demonstrate that Target lacked probable cause to detain her, (iii) that Jones is guilty of the underlying offense, and (iv) that no evidence supports Jones' claim for punitive damages. Because the first issue is dispositive, it is unnecessary to reach Target's other grounds for summary judgment.

## II.

■ The threshold issue is to identify the appropriate governing law. Because this case was removed on diversity grounds, state law, including state choice of law rules, governs the substantive claims. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). It follows, therefore, that as all events occurred in Virginia, Jones' substantive claims are governed by Virginia law. *See McMillan v. McMillan*, 219 Va. 1127, 253 S.E.2d 662, 663 (1979) (the principle of *lex loci delicti* required application of Virginia law because Virginia was the place of the wrong). But importantly, it is settled that a different result obtains with respect to procedural matters; they are governed by federal law, specifically the Federal Rules of Civil Procedure. *See Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Thus, the procedural standard against which Target's summary judgment motion must be measured is Rule 56, Fed.R.Civ. P., and the decisional authority construing this provision. Specifically, summary judgment is appropriate only when there is no issue of material fact and the movant is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). While it is true that on summary judgment the facts must be viewed in a light most favorable to the non-moving party, it is equally true that the non-moving party "may not rest upon mere allegations or denials ... but must set forth specific facts showing that there is a genuine issue [of material fact]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, "the mere existence of some disputed facts does not require that a case go to trial," rather, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury

verdict." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir.1995) (citing *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505). Given these principles, it follows that Virginia's rules governing summary judgment, as they differ from their federal counterparts,[3] are inapplicable here.

### III.

A Virginia merchant is exempt from civil liability for detaining a suspected shoplifter if its agent or employee had probable cause to believe the person had shoplifted or wilfully concealed store merchandise. This immunity, now codified at Virginia Code § 8.01–226.9,[4] provides in pertinent part as follows:

> A merchant, agent, or employee of the merchant, who causes the arrest or detention of any person pursuant to the provisions of ... 18.2–96 [petit larceny], or § 18.2–103 [shoplifting], shall not be held civilly liable for ... malicious prosecution, [or] false imprisonment ... provided that ... the merchant, agent or employee of the merchant, had at the time of such arrest or detention probable cause to believe that the person had shoplifted or committed willful concealment of goods or merchandise.

Va.Code § 8.01–226.9.

Importantly, the Fourth Circuit in applying this statute has observed that the " 'scope of the exemption intended by the General Assembly was very broad' " and thus an "expansive rather than restrictive scope [is given] to the probable cause defense." *Brandau v. J.C. Penney Co.*, 646 F.2d 128, 132 (4th Cir.1981) (citing *F.B.C.*

*Stores, Inc. v. Duncan*, 214 Va. 246, 198 S.E.2d 595, 598 (1973)). This is so, according to the Fourth Circuit, because the General Assembly, seeking to remedy the "multi-billion dollar epidemic of shoplifting and recognizing that police officers cannot be omnipresent," deliberately chose to "enlarge the merchant's 'property rights' while diminishing the shopper's 'personal rights.' " *Id.* at 131 (citing *F.B.C. Stores*, 198 S.E.2d at 598). To be sure, this immunity is not absolute; it does not apply to torts committed in a "willful, wanton or otherwise unreasonable or excessive manner." *Jury v. Giant of Md., Inc.*, 254 Va. 235, 491 S.E.2d 718, 720 (1997).

■ To establish immunity under § 8.01–226.9, the burden is on the defendant to demonstrate probable cause as an affirmative defense. *Tweedy v. J.C. Penney Co.*, 216 Va. 596, 221 S.E.2d 152, 154 (1976). Further, the determination of probable cause depends on "whether the circumstances disclosed by the evidence were such as to justify an ordinarily prudent person in acting as defendants acted here." *F.B.C. Stores*, 198 S.E.2d at 599. Put differently, probable cause is "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which she is suspected." *Bain v. Phillips*, 217 Va. 387, 228 S.E.2d 576, 581 (1976) (defining probable cause in malicious prosecution context). Significantly, the probable cause inquiry is directed to the information known to the defendant at the "time of unofficial detention." *Brandau*, 646 F.2d at 132 n. 5. Thus, any "later

---

**3.** For example, in sharp contrast to federal summary judgment law, summary judgment in Virginia may be based only upon undisputed facts established by pleadings, admissions in pleadings, and admissions made in answers to requests for admission and may not be based "in whole or in part upon any dis-

covery depositions ...." Rule 3:18, Va. Sup. Ct. R.; *Andrews v. Ring*, 266 Va. 311, 585 S.E.2d 780, 783 (2003).

**4.** At the time of the incident in issue, the identical provision was codified at Virginia Code § 18.2–105.

discovered facts suggesting innocence" do not deprive the merchant of the defense if he "nevertheless proceeded thereafter to cause an official arrest and criminal prosecution." *Id.*

To demonstrate sufficient probable cause to detain a customer for petit larceny pursuant to Virginia Code § 18.2–96, a merchant must show that at the time of a customer's detention its employees had probable cause to believe that the customer (i) wrongfully or fraudulently took (ii) the merchant's goods (iii) of value less than $200 (iv) without the merchant's assent, and (v) with an intent to deprive the merchant of the goods permanently. *See* Va. Code § 18.2–96; *Bright v. Commonwealth,* 4 Va.App. 248, 356 S.E.2d 443, 444 (1987).[5] Thus, Target in this case must show that it had probable cause to believe that Jones wrongfully or fraudulently took the television and VCR without Target's consent and with the intent to deprive Target of these goods permanently.[6]

■ The record facts reflect that Target's security personnel detained Jones with probable cause to believe that she had committed the crime of petit larceny. In their simplest form, the record facts known to Target security personnel at the time Jones exited the store were as follows:

(i) that Jones had received full credit on her mother's credit card for the returned TV/VCR combo;

(ii) that Jones did not pay for the new television and VCR she selected;

(iii) that Jones had stood in close proximity to a companion who had shoplifted more than once in the thirty minutes they spent in the store; and

(iv) that Jones had attempted to leave the store with the television and VCR and without a receipt proving that she had purchased them.

Thus, at the time Jones left the store, she had both a credit on her mother's credit card for $211.99 and merchandise worth $203.75 that she had not paid for, namely the television and VCR. The totality of the circumstances would give any "ordinarily prudent person" probable cause to believe that the crime of shoplifting or petit larceny had occurred.

Also worth noting in this regard is that Jones' actions were arguably inconsistent with attempting to conduct an even exchange of merchandise. Thus, Jones selected a replacement television and VCR different from and a bit less expensive than the TV/VCR set returned. Yet Jones did not initially return to the customer service desk and seek a refund, but sought instead to complete the transaction in the electronics department, telling the clerk there, erroneously, that it was an even exchange. Thus, it was entirely reasonable for Target security personnel to conclude that Jones had intentionally returned the TV/VCR combination unit to obtain the credit on her mother's credit card, then had fraudulently attempted to conduct an even exchange for the returned items. Indeed, although not determinative,[7] it ap-

5. While Jones was ultimately charged with petit larceny under § 18.2–96, the charge might have easily been the essentially similar offense of "shoplifting" under § 18.2–103, which prohibits anyone who, "without authority, with the intention of converting goods or merchandise to his own or another's use without having paid the full purchase price thereof, or of defrauding the owner of the value of the goods or merchandise, (i) willfully conceals or takes possession of the goods or merchandise of any store or other mercantile establishment . . . ."

6. Although the total value of the television and VCR was $203.75, Jones was nonetheless charged only with petit larceny pursuant to Virginia Code § 18.2–96.

7. It is possible, for example, for facts known to a merchant to differ from the facts known to a police officer when making his or her

pears that Officer Patterson reached the same conclusion in deciding to issue the summons.

While there appears to be little decided authority factually on point, *Hall v. Wal–Mart Stores East, Inc.*, 2003 WL 22757942, U.S. Dist. LEXIS 21016 (W.D.Va.2003) supports the result reached here. There, a grocery store customer told the store clerk that she would return some azalea plants she had decided not to purchase to the racks outside the front of the store, but then inadvertently returned to her car and loaded all of her other groceries without returning the azaleas. Although the customer had apparently simply forgotten to return the plants and fully intended to return them to the racks outside the store, the district court appropriately found that Wal–Mart was immune from suit for false imprisonment and malicious prosecution because the Wal–Mart personnel, from their perspective, had probable cause to believe that the customer intended to leave the parking lot without paying for the plants. *Id.* at *3. In the same way, plaintiff here may well have intended to complete an even exchange, but from the perspective of Target's employees, Jones had

attempted to remove the television and VCR without paying for them and thus Target's employees had sufficient probable cause to detain Jones.[8]

Jones objects to summary judgment on the probable cause issue on five discernible grounds: (i) that there exist triable disputed issues of fact that could lead a jury to conclude that Target's employees did not have probable cause to detain her; (ii) that Target's employees impermissibly relied on surveillance video of Jones' companion to reach their finding of probable cause; (iii) that the probable cause determination is unsuitable for summary judgment; (iv) that Jones' acquittal is conclusive evidence that Target's employees lacked probable cause to detain her, and (v) that Target's employees failed to act reasonably by refusing to conduct further investigation once they had detained Jones. None of Jones' arguments are persuasive.

■ First, Jones argues that there are a number of disputed facts. Specifically, she contends that the following facts are in dispute:

> (i) whether Jones received a receipt documenting the credit to her mother's

---

determination of probable cause. *See, e.g., Stamathis v. Hansen*, 2002 WL 1477586, 2002 U.S. Dist. LEXIS 12398 (W.D.Va.2002) (customer arrested but summary judgment on issue of probable cause denied).

**8.** Cases that have denied summary judgment on the probable cause issue are easily distinguished on their facts. For example, in *Stamathis v. Flying J., Inc.*, 2002 WL 1477586, 2002 U.S. Dist. LEXIS 12398 (W.D.Va.2002), the plaintiff truck driver attempted several times to pay a merchant's fuel clerks for fuel and then, after being directed twice by loud speaker to move his truck from the fueling station, moved his truck to a nearby lot, all conduct that, when interpreted by a reasonable person, was consistent with an attempt to pay, not with, as here, probable cause to believe the customer had attempted to avoid paying. Similarly, in *West v. Wal–Mart*

*Stores, Inc.*, 1999 WL 195684, 1999 U.S. Dist. LEXIS 4324 (W.D.Va.1999), the facts reasonably known to Wal–Mart personnel did not add up to probable cause. There, Wal–Mart personnel suspected a fraudulent return of a staple gun, but knew only that the customer had selected a staple gun from the shelves and later walked out with a cash refund, but did not know whether the customer had entered the store with a different staple gun, which he did, or that Wal–Mart's own customer service agents had directed the customer to select a staple gun from the shelves to scan the UPC label. Here, the facts reasonably known to Target's security personnel after observing Jones for the entire time she was in the store and after speaking with their customer service agents was sufficient to establish probable cause that she was attempting to shoplift the television and VCR in her cart.

account for the price of the returned TV/VCR;

(ii) whether Jones was told that she could make an even exchange for the TV/VCR unit;

(iii) whether Jones knew, when she checked out with the cashier, that her mother's card had been credited with the price of the returned merchandise;

(iv) whether Jones told Mays that she had already paid for the television and VCR;

(v) whether Jones was aware that Mays voided the transaction ringing up the television and VCR;

(vi) whether Jones gave Haddad a copy of the receipt evidencing the credit to her mother's credit card account and admitted to Haddad that she knew that her mother's account had been credited; and

(vii) whether Officer Patterson had probable cause to arrest and charge Jones with shoplifting.

Significantly, Jones' putative disputed facts focus chiefly on Jones' perception or understanding of the events or on Jones' explanation to security personnel when she was apprehended.[9] Yet, her perceptions or understanding do not control, for the probable cause inquiry is conducted not from the customer's perspective, but rather from the facts as they appear to a reasonable merchant or its agents. *F.B.C. Stores*, 198 S.E.2d at 599. Thus, the inquiry does not depend on the beliefs or good intentions of the customer. Put differently, the key inquiry is "the *merchant's reasonable perception* of the conduct." *Hall*, 2003 WL 22757942, *3, U.S. Dist. LEXIS 21016, at *12 (emphasis added). So, even if, for example, Jones believed in good faith that she was making an even exchange, this is immaterial to the determination of probable cause, though, of course, Jones' state of mind and intent are central to the determination of guilt and indeed, she ultimately prevailed in this regard.

Similarly, even if Jones never received a copy of the receipt documenting the credit to her mother's card, or never read it closely, or even if Jones was told that she could conduct an even exchange and did not understand that the purchase price would still need to be re-charged to her mother's credit card, it is undisputed that Jones' mother's credit card was refunded the price of the returned merchandise and that Target security personnel knew this. Thus, acting on the information known to them at that time, it was reasonable for Target's security personnel to assume that Jones knew that she had already received a full refund for the TV/VCR. In the same way, Jones argues that she never

---

**9.** Jones also contends that there is a dispute concerning whether she was held for more than one hour thereby rendering § 8.01–226.9 inapplicable. This argument fails factually and legally. It fails factually because Jones admitted in her deposition that she was held for only fifteen to twenty-five minutes before Officer Patterson arrived and that she was held only an additional ten to fifteen minutes while Officer Patterson conducted his investigation. Moreover, Jones' argument fails legally because, by the statute's plain terms, the one-hour limit on immunity applies only to claims for unlawful detention, not to claims for malicious prosecution or false imprisonment. *See* Va.Code § 8.01–226.9 ("A merchant … shall not be held civilly liable for unlawful detention, if such detention does not exceed one hour, slander, malicious prosecution, false imprisonment, false arrest, or assault and battery of the person so arrested and detained ...."); *F.B.C. Stores*, 198 S.E.2d at 598 ("Since the General Assembly listed both false imprisonment and unlawful detention, unless we are to presume legislative redundancy we must conclude that the legislature considered detention to have particular significance in this context."). Thus, as long as the duration of Jones' detention was reasonable, which it was, Target may claim the immunity provision's protection.

told the cashier that she had previously paid for the television and VCR, but rather argues that she discussed with the cashier that this was an even exchange for the returned TV/VCR. But even if Mays and Jones both believed Jones was making an even exchange, it was nonetheless reasonable for Target's security personnel to conclude that Jones had fraudulently convinced Mays that she had permission to make an even exchange. The facts remain that Jones left the store with approximately $200 in merchandise in her cart and more than a $200 credit on her mother's credit card, which facts were known to Target security personnel and were sufficient to give them probable cause to believe that Jones was attempting to shoplift the items in her cart. The other facts in dispute, including the nature of the information Jones provided to Target security personnel when she was detained and whether Officer Patterson had probable cause to arrest, are immaterial to the probable cause inquiry at the time of the detention.

Second, Jones objects that Target's employees, in reaching their conclusion that she intended to steal the television and VCR, relied in part on their video surveillance that captured Jones' companion shoplifting while Jones stood within close proximity. Jones argues that although this might have given Target probable cause to detain her friend, who was committing a crime, it did not provide probable cause to detain Jones, who was at Target only to make an exchange. It is true that evidence that Jones was in the company of a shoplifter, by itself, is not sufficient to establish probable cause any more than a person's presence in a high crime area establishes probable cause to believe he has committed a crime in the search and seizure context. *Cf. Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) ("The fact that appellant was in a neighborhood frequented by drug users

standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct."). In this case, however, Target's security personnel did not rely merely on Jones' presence in a place of crime, but rather on the inference that Jones' close proximity to her friend while her friend actively committed a theft meant that Jones may have been complicit in the act. Moreover, it is axiomatic that a determination of probable cause is a totality of the circumstances inquiry. *See, e.g., Hollis v. Commonwealth,* 216 Va. 874, 223 S.E.2d 887, 889 (1976). Thus, although this piece of evidence alone would not have established probable cause to detain Jones, taken as a whole with the evidence that Jones was exiting the store with merchandise for which she had not paid, Target's security personnel could reasonably conclude that Jones intended to deceive its employees and to steal the electronics in her cart.

■ Jones also argues that the probable cause determination is unsuitable for summary judgment, citing *F.B.C. Stores* in support. 198 S.E.2d at 599 ("Unless the evidence leaves no room for reasonable men to disagree, [probable cause] will be a question of fact properly within the province of the jury."). This argument fails because it is settled that "federal procedural standards," not state procedural standards, "govern whether summary judgment is appropriate in any given case." *Util. Control Corp. v. Prince William Constr. Co.,* 558 F.2d 716, 720 (1977) (citing *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)). Thus, although summary judgment is inappropriate if the non-moving party raises any *material* issues of disputed fact "the mere existence of some disputed facts does not require that a case go to trial." *Thompson Everett,* 57 F.3d at 1323. Instead, "the quality and quantity of the evidence

offered to create a question of fact must be adequate to support a jury verdict." *Id.* Applying federal summary judgment standards, the evidence presented here in opposition to summary judgment clearly is insufficient to establish any material issues of fact for a jury to decide.

Next, Jones argues that her ultimate acquittal "is conclusive evidence that Target lacked probable cause when she was stopped," citing *Janney v. Arlan's Department Store,* 247 F.Supp. 306 (W.D.Va. 1965). Although Jones correctly cites *Janney*'s holding that a conviction is conclusive evidence of probable cause, it is a logical fallacy to reason that this proposition requires the converse conclusion that an acquittal is conclusive evidence of a lack of probable cause. A conviction or acquittal occurs only after a full trial on the merits with the government bearing the heavy burden of proving its case beyond a reasonable doubt. By contrast, the probable cause determination is subject to a much lower burden of proof [10] and depends only on facts known to a merchant's employees. So, it is not surprising that courts often find probable cause in the face of subsequent acquittals. *See, e.g., Wiggs v. Farmer,* 205 Va. 149, 135 S.E.2d 829, 831–32 (1964) (holding that acquittal not inconsistent with finding of probable cause in malicious prosecution case); *Saunders v. Baldwin,* 112 Va. 431, 71 S.E. 620, 622 (1911) ("[T]he acquittal of the accused is not evidence of a want of probable cause."). In sum, it is entirely consistent for Target's employees to have probable cause to believe that Jones had shoplifted based on evidence that proves ultimately insufficient to establish guilt beyond a reasonable doubt.

■ Finally, Jones argues that Target's security personnel failed to act reasonably under the circumstances because, when she was first detained, Jones requested that they return to speak with Mays to clear up any confusion. This argument ignores the fact that when Jones walked out of the store, the offense was completed. And, the probable cause inquiry is directed to the information known to the defendant at the "time of unofficial detention." *Brandau,* 646 F.2d at 132 n. 5. If further investigation produces additional evidence exonerating the individual, that does not bear on the determination of probable cause based on more limited information at the time of detention. In other words, "later discovered facts suggesting innocence" do not deprive the merchant of the defense if he "nevertheless proceeded thereafter to cause an official arrest and criminal prosecution." *Id.* Moreover, it would hardly have been surprising to retail security personnel, who probably hear numerous denials and excuses on a daily basis, to hear Jones claim that she was not shoplifting, but merely exchanging merchandise for returned defective merchandise with full knowledge of Target personnel.

In summary, the record facts support or confirm Target's claim of statutory immunity. Yet it is important to note that this conclusion is in no way a judgment on the behavior or actions of any of the parties in this case. From Jones' perspective, it is easy to understand her anger for it appears that she did not intend to steal the television and VCR from the store but took them based on a misunderstanding. Nonetheless, she was forced to go through

---

10. *See Saunders v. Baldwin,* 112 Va. 431, 71 S.E. 620, 622 (1911) ("[I]t would be manifestly unreasonable to hold that the failure of the prosecution to make out [a case beyond a reasonable doubt] is evidence of the want of probable cause for instituting the prosecution"); *see also* Black's Law Dictionary 1201 (6th ed.1990) (describing probable cause as "more than mere suspicion but less than the quantum of evidence required for conviction").

a trial to establish that she had no fraudulent intent and that it was merely an innocent mistake. Yet it is equally easy to understand the conduct of Target's employees who must contend daily with countless attempted and successful thefts resulting in large losses. In the circumstances, Target security personnel, although ultimately mistaken, had ample reason to suspect that Jones had shoplifted the articles in her cart and that her denials and statements to the contrary were no different from those typically heard on a daily basis from shoplifters. While the General Assembly might have struck a different balance between the interests of merchants and those of customers, it chose to strike the balance reflected in § 8.01–226.9, a balance which, on the undisputed material facts presented, compels the result reached here.

An appropriate Order will issue.