**In re Cecil Edward MARTIN, Jr., Debtor.**

**CRENSHAW ASSOCIATES, Plaintiff,**

**v.**

**Cecil E. MARTIN, Jr., Defendant.**

**Bankruptcy No. 91–32935–S.
Adv. No. 91–3137–S.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

March 11, 1992.

Frank R. Rennie, IV, Cowan and Owen, P.C., Richmond, Va., for plaintiff.

Donald W. Lemons, Durrette, Irvin, Lemons and Fenderson, P.C., Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before this Court upon the December 13, 1991, filing by the defendant, Cecil E. Martin, Jr. ("Martin"), of a motion for summary judgment, pursuant to Bankruptcy Rule of Civil Procedure 7056 and Federal Rule of Civil Procedure 56, on the complaint filed by Crenshaw Associates ("Crenshaw") on October 21, 1991. Said complaint was filed, pursuant to 11 U.S.C. § 523(a)(2)(B), to determine the dischargeability of a debt incurred by an extension of credit allegedly granted in reliance upon a financial statement of Martin's dated December 31, 1988 (the "1988 Financial Statement").

After consideration of the affidavits, exhibits, and arguments of counsel heard on January 17, 1992, the Court makes the following findings and conclusions of law.

## STATEMENT OF THE CASE

This cause of action arises out of a series of agreements and transactions between Crenshaw and Martin, Irvin L. Sanderson, Jr. ("Sanderson"), Sanderson Nissan of North Carolina, Inc. ("Sanderson Nissan"), and Kenneth J. Bloech ("Bloech").

In June 1988 the parties entered into a number of transactions regarding a certain parcel of real property located at 3475 Myer Lee Road, Winston–Salem, Foresyth County, North Carolina (the "North Carolina Property"). Crenshaw and Sanderson Nissan entered into a lease of the North Carolina Property which included therein an option to purchase said property. Cash, in the amount of $46,065.27 and two unsecured notes in the amounts of $250,000 and $450,000, respectively, were paid or given to Crenshaw as consideration for the lease and the purchase option. The $250,000 note executed by Sanderson Nissan had no individual makers nor did it contain any personnel guarantees by Martin, Sanderson or Bloech. The $450,000 note was executed individually by Martin, Sanderson and Bloech. A separate contract between Crenshaw and Sanderson, Martin and Bloech required Martin, Sanderson and Bloech to purchase the North Carolina Property if Sanderson Nissan elected not to exercise its purchase option. In September of 1989 Sanderson Nissan defaulted under the terms of the lease, thereby nullifying its purchase option. Also in September of 1989, Martin, Sanderson and Bloech defaulted under the terms of the $450,000 note, as did Sanderson Nissan on the $250,000 note. Due to Sanderson Nissan's failure to exercise its purchase option, Crenshaw made demand upon Martin, Sanderson and Bloech to perform according to the provisions of their purchase contract.

In October 1989, the parties commenced negotiations in an effort to reach an agreeable accord. On October 25, 1989, Crenshaw, Martin, Sanderson Nissan, Sanderson, and Bloech entered into a settlement agreement ("the Agreement") under which Martin and the others are alleged to have received an extension of credit relating to the original obligations of the parties involving the North Carolina Property. Although all parties were represented by counsel, the Agreement was drafted by counsel for Crenshaw and said counsel decided which exhibits were to be attached thereto. As part of the Agreement, the $250,000 note and the $450,000 note were consolidated into a single note ("the Note") in the principal amount of $620,239.96, of which Martin and Sanderson were signatories on the Note and Bloech was a guarantor of 20% of the indebtedness. An $850,000 second deed of trust on 10 acres of real property located in Henrico County, Virginia was to be executed, on or before October 31, 1989, as additional security for the Note, the lease and the purchase agreement. The Agreement required a subsequent certification that there was at least

$850,000 of equity in said real property and that the obligation secured by the first deed of trust be restricted to a maximum of $1,850,000. The Agreement also reinstated the original lease-purchase contract.

The Agreement contained a merger clause in paragraph 8 which states, in pertinent part, that

> this agreement and the exhibits attached hereto contain the entire agreement between the parties and there are no representations, inducements or other provisions other than those expressed herein.

Paragraph 6 of the Agreement required both Martin and Sanderson to provide Crenshaw with a current verified copy of their personal financial statements on or before November 20, 1989 and annually thereafter on or before March 1 of each calendar year.

It appears from the pleadings that a consent judgment, in the amount of $1.6 million, was entered in favor of Crenshaw against Martin in the Superior Court of North Carolina. Said judgment appears to be, at least in part, the result of Martin's default under the terms of the Agreement and the Note. Said judgment is the debt which Crenshaw wishes this Court to determine to be nondischargeable in bankruptcy.

The Agreement calls for the application of the law of the state of North Carolina to determine any questions of construction or interpretation regarding the Agreement.

### CONCLUSIONS OF LAW

■ Federal Rule of Civil Procedure 56 provides that summary judgment is appropriately granted if

> the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that moving party is entitled to a judgment was a matter of law.

To determine the materiality of the facts before the Court, the Court must look to the substantive law on contracts to determine the applicability of the parol evidence rule where an allegation of fraud has been made by the party to the contract. "It is the substantive law's identification of which facts are critical and which facts are relevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ In review of the facts presented to the Court to determine whether a triable issue exists, the Court must review such facts in the light most favorable to Crenshaw and any and all inferences to be made from such facts must also be considered to favor Crenshaw, *Matsushita Electric Industry Company Limited v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), although "if the evidence is merely colorable or is not significantly probative" summary judgement may then be granted. *Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should not be regarded as a "disfavored procedural shortcut but rather as an integral part of the Federal Rules as a whole which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ "North Carolina clearly recognizes the validity of merger clauses and the state courts have repeatedly enforced such clauses." *Smith v. Central Soya of Athens, Inc.*, 604 F.Supp. 518 (D.Ct.E.D.N.C.1985). Merger clauses serve to protect the parties to a contract by preventing the introduction of parol evidence where a writing "totally integrates all the terms of the contract or supercedes all other agreements relating to the transaction. The rule is otherwise where it is shown that the writing is not a full integration of the terms of the contract." *Craig v. Kessing*, 297 N.C. 32, 253 S.E.2d 264 (1979).

The Court in *Smith*, supra, ruled that the inclusion of a merger clause in a contract "generally provides unambiguous and unassailable evidence of the parties intent with reference to the terms of the contract," although the Court declined to further find that the existence of a merger clause effected a conclusive presumption that a contract was totally integrated.

However, the Court in *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959), made a distinction between those merger clauses which were general in nature and those which contain specific disclaimers. The Court stated that the parol evidence rule is not a bar to the introduction of evidence to support a cause of action for fraud "despite an *omnibus* statement that the written instrument embodies the whole agreement or that no representations had been made," however, the Court opined that permitting the introduction of parol evidence to show the existence of fraudulent reliance in contradiction to a *specific* merger clause, "would be to say that it is impossible for two businessmen dealing at arm's length to agree that the buyer is not buying in reliance on any representations of the seller as to a particular fact." *Id.* (Emphasis added).

■ The Court must therefore first determine whether the merger clause contained in the Agreement is general in nature or if the merger clause specifically incorporates the intent of the parties that the Agreement be a fully integrated representation of the parties' dealings. This Court has previously held that, where a contract stated that the defendant "would not be bound by any terms, conditions, statements, warranties or representations" not contained therein and where the plaintiffs were adequately represented by counsel who had reviewed and approved the document, parol evidence would be barred and the plaintiff would be held to the terms of the agreement. *In re Criswell*, 52 B.R. 184 (E.D.Va.1985).

It appears to the Court that the plain meaning of paragraph 8 clearly dictates that the Agreement and the attached exhibits encompass the entire agreement between the parties. Crenshaw and Martin were both represented by counsel. Although, Crenshaw, by counsel, drafted the Agreement and dictated which exhibits would be attached thereto, Crenshaw is the party now claiming that the Agreement does not mean what it clearly states. The language of paragraph 8 specifically states

that the only representations, inducements and provisions to the Agreement are those contained within the body of the Agreement and the attached exhibits. The Court therefore finds that the merger clause contained in paragraph 8 is a specific merger clause which bars the introduction of parol evidence to prove Crenshaw relied upon any representations contained in the 1988 Financial Statement as inducement to enter into the Agreement.

Judge Fuld, in his dissenting opinion, in *Danann Realty Corp., supra,* expressed concern about instances where a fraud is perpetrated and the injured party is barred from bringing suit because the contract, which itself was procured through fraud, is the document to be used to prevent an assertion of the fraud. Although this Court can envision such a situation where a less sophisticated party is duped into signing an agreement which by its terms prohibits recovery based upon the fraud, such is not the case presently before the Court. The parties to this proceeding had been involved in a continuous business relationship for more than one year prior to the signing of the Agreement and this is clearly a different situation from that of unrelated parties contracting initially.

If in this instance the parties were in fact conducting business on an uneven playing field, it appears that the field was tilted in favor of Crenshaw. Although both parties were represented by counsel, counsel for Crenshaw drafted the Agreement and chose which documents were to be incorporated as attachments. It must also be noted that this was not Martin's first entry into a contractual agreement with Crenshaw. He was already obligated to perform under the original contracts and, being unable to perform, was negotiating to make the most out of a bad situation.

The Agreement refers to a current and verified financial statement to be submitted subsequent to the execution of the Agreement and on or before November 20, 1989. The Court finds that such a financial statement is the only one referenced by the Agreement and consequently can be the only financial statement upon which representations or inducements could have been

made. The Court further finds that the only financial statement received by Crenshaw was the 1988 Financial Statement which Crenshaw alleges was received prior to the execution of the Agreement. It appears to the Court from the pleadings that no other financial statement was received by Crenshaw after the finalization of the contract and before the November 20, 1989 deadline. The timing of the possession of the financial statement is not crucial to this determination. The Agreement called for a current financial statement to be delivered by November 20, 1989. The statement of 1988, if delivered prior to the execution of the contract, was superceded by the contract calling for delivery of a current financial statement and if delivered after execution, it could not have been relied upon. Crenshaw's attorney drafted the language which limited any inducements to contract to those inducements contained in the Agreement and the attachments thereto. If Crenshaw had in fact received the 1988 Financial Statement prior to execution of the Agreement, which this Court for the purpose of this motion takes as being true, it could have easily chosen to incorporate the financial statement into the Agreement, however, Crenshaw failed or chose not to include the 1988 Financial Statement as an attachment to the Agreement. Crenshaw was under no obligation to attach that statement, however, by incorporating the specific merger clause into the Agreement, Crenshaw is now precluded from offering the financial statement as a document upon which it relied because to do so would violate the parol evidence rule.

■ A debt will be found non-dischargeable in bankruptcy if the debt was incurred as an extension, renewal or refinancing of credit to the extent that the debt was obtained by a statement in writing which was (1) materially false, (2) represented the debtor's or an insider's financial condition, (3) was reasonably relied upon and, (4) that the debtor caused to be made or published with the intent to deceive. 11 U.S.C. § 523(a)(2)(B). As the elements of § 523(a)(2)(B) are stated in the conjunctive, each element must be present for the Court to find a debt non-dischargeable in bankruptcy.

The inclusion of a specific merger clause in the Agreement stating that there were no representations, inducements or provisions other than those expressed therein or included in the attachments leads the Court to find that the Agreement is one which is totally integrated and which therefore bars Crenshaw from introducing evidence on the issue of fraud regarding the 1988 Financial Statement and consequently it cannot be used for the purpose of showing reliance on a statement in writing regarding the debtor's financial condition. As a result of this proscription Crenshaw is unable to meet its burden of proving reasonable reliance as required by 11 U.S.C. § 523(a)(2)(B)(iii). Furthermore, the very issue of 11 U.S.C. § 523(a)(2)(B) cannot be raised because that subsection's preamble presumes the existence of a statement in writing and although, as a matter of fact for the purpose of this motion, it appears a written financial statement existed, its use as evidence at trial is precluded by the parol evidence rule. For these reasons the Court must find that there is no genuine issue of material fact presently before the Court and therefore as a matter of law the defendant's motion for summary judgement should be granted.

An appropriate Order will be entered in conformity with this opinion.